UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT SEATTLE

| | |
|---|---|
| HOLLIS B., | CASE NO. 3:25-cv-05049-JNW |
| Plaintiff, | ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION |
| v. | |
| COMMISSIONER OF SOCIAL SECURITY, | |
| Defendant. | |

Plaintiff Hollis B. seeks review of the denial of his application for Supplemental Security Income ("SSI") under the Social Security Act ("the Act"). He contends that the administrative law judge ("ALJ") erred in evaluating the severity of his complex regional pain syndrome and erred in evaluating the medical opinion of Dr. James Lenhart. The Court REVERSES and REMANDS the Commissioner's denial of benefits.

## 1. LEGAL STANDARD

"Under 42 U.S.C. § 405(g), this Court may overturn the Commissioner's denial of social security benefits if the ALJ's decision rests on legal error or is not supported by substantial evidence." *Elizabeth G. v. Comm'r of Soc. Sec.*, Case No.

C24-2025-MLP, 2025 WL 1519230, at *1 (W.D. Wash. May 27, 2025) (citing *Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022)). Substantial evidence is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Biestek v. Berryhill*, 587 U.S. 97, 102–03 (2019) (citation modified)). "In applying this standard, the Court must consider the record as a whole to determine whether it contains sufficient evidence to support the ALJ's findings." *Id.* The ALJ is responsible for resolving ambiguities in the medical evidence, and if the evidence can be interpreted in more than one rational way, the ALJ's decision must be upheld. *Smartt*, 53 F.4th at 494; *Batson v. Comm'r of Soc. Sec.*, 359 F.3d 1190, 1196 (9th Cir. 2004) ("When evidence reasonably supports either confirming or reversing the ALJ's decision, [the reviewing court] may not substitute [its] judgment for that of the ALJ."). Reversal is warranted only if the ALJ erred, and the error affected the outcome of the disability determination. *Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020). The party challenging the ALJ's decision bears the burden of proving harmful error. *Shinseki v. Sanders*, 556 U.S. 396, 409 (2009).

To determine whether a claimant is disabled, an ALJ must employ a five-step sequential analysis, examining: (1) whether the claimant is engaging in "substantial gainful activity"; (2) whether the claimant has a "severe medically determinable physical or mental impairment" or combination of impairments that has lasted for more than 12 months; (3) whether the impairment "meets or equals" one of the listings in the regulations; (4) whether, given the claimant's residual functional capacity ("RFC"), he can still do his "past relevant work"; and (5) whether the

claimant "can make an adjustment to other work." *Molina v. Astrue*, 674 F.3d 1104, 1110 (9th Cir. 2012), *superseded by regulation on other grounds*; see 20 C.F.R. § 404.1520(a).

## 2.  BACKGROUND

Plaintiff is fifty-four years-old, with a high school education, and no past work experience. AR 1286. He first applied for benefits in June 2020, alleging disability since June 1, 2020. AR 1267. His application was denied and he requested a hearing. The ALJ issued an unfavorable decision on March 29, 2022, which Plaintiff appealed to the U.S. District Court for the Western District of Washington. Judge Ricardo S. Martinez reversed and remanded, finding that the ALJ erred in evaluating the medical opinion evidence. The court reasoned that the ALJ erred by simply "recit[ing]" Dr. Lenhart's medical opinion without "actually evaluat[ing]" the opinion. *Hollis B. v. Comm'r of Soc. Sec.*, No. C23-5259 RSM, 2023 WL 6619522, at *3 (W.D. Wash. Oct. 11, 2023).

In October 2024, the ALJ heard Plaintiff's case again and denied benefits. At Step 2, the ALJ found that Plaintiff's "complex regional pain syndrome ("CRPS") was medically determinable but not a severe impairment. At Step 3, the ALJ found that Plaintiff's impairments did not meet or equal the requirements of a listed impairment. The ALJ found that Plaintiff has the residual functional capacity to perform light work as defined in 20 C.F.R. § 416.967(b), with the following limitations:

> Claimant could only occasionally climb ladders, ropes, or scaffolds, and [] crawl. [He] could have occasional exposure to vibration and [] cold temperatures. He could frequently, but not continuously, handle and

finger bilaterally. [He] could understand, remember, and apply detailed, but not complex, instructions, and perform work not in a fast-paced production type environments. [He] could have occasional interaction with the general public.

AR 1274–75.

Based on this RFC, the ALJ concluded that Plaintiff was not disabled and that he could perform jobs that exist in significant numbers in the national economy. AR 1287. Plaintiff seeks judicial review.

### 3. DISCUSSION

Plaintiff argues that the ALJ erred by: (1) finding his CRPS was *not* a "severe" impairment at Step 2; and (2) improperly evaluating the medical opinion of Dr. James Lenhart. As discussed below, these errors at Step 2 are interrelated. The ALJ's flawed assessment of Plaintiff's CRPS at Step 2 infected the RFC determination by providing a basis for discounting the only treating physician opinion addressing Plaintiff's CRPS-related functional limitations. Both errors warrant reversal and remand.

Before turning to the specific errors, the Court notes that CRPS claims require careful application of Social Security Ruling ("SSR") 03-2p, the agency's own ruling governing evaluation of CRPS. SSR 03-2p instructs that "it is characteristic of [CRPS] that the degree of pain reported is out of proportion to the severity of the injury." Signs of CRPS "are not present continuously, or the signs may be present at one examination and not appear at another," and that "conflicting evidence in the medical record is not unusual...due to the transitory nature of its objective findings and the complicated diagnostic process involved." *See also Hunt v. Astrue,* No.

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 4

EDCV 08-00299-MAN, 2009 WL 1519543, at *5 (C.D. Cal. May 29, 2009) ("RSD/CRPS is a disease diagnosed primarily based on subjective complaints, and the absence of 'objective medical evidence,' such as x-rays or laboratory tests, cannot be cited as a legitimate basis for rejecting plaintiff's subjective pain and limitations testimony."). SSR 03-2p further instructs that anti-inflammatory and muscle relaxant medications may be used to reduce CRPS pain, and that where conflicts exist in the medical evidence, clarification "should be sought first from the individual's treating or other medical sources." These principles are critical to evaluating the ALJ's reasoning here, because the ALJ repeatedly relied on the very types of evidence—normal exam findings, "no acute distress" notations, and conservative treatment—that SSR 03-2p warns are unreliable indicators of CRPS severity.

### 3.1    The ALJ erred in finding that Plaintiff's CRPS was not a severe impairment.

At Step 2, a claimant must show he has a medically determinable impairment that "significantly limit[s] [the claimant's] physical or mental ability to do basic work activities." 20 C.F.R. § 416.922(a). Step 2 operates as a *de minimis* screening device to dispose of groundless claims. *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996). An impairment is "not severe" only if it amounts to a "slight abnormality" having "no more than a minimal effect on an individual's ability to work." *Id.*

The ALJ's decision states that Dr. Lenhart diagnosed Plaintiff with CRPS "in 2024" in both the left upper and lower extremities. AR 1272. But this finding is

contradicted by Dr. Lenhart's January 2022 evaluation, which documented CRPS and opined that Plaintiff could only stand and/or walk for two to four hours, sit for four to six hours, and needed to recline for four to six hours during an eight-hour workday. AR 1252–55. Dr. Lenhart opined that Plaintiff is limited to frequent handling with his left upper extremity and limited to frequent reaching with the left upper extremity and was unable to meet the demands of sedentary work. AR 1255. Because the record supports a diagnosis as early as January 2022, the CRPS diagnosis comfortably satisfies the twelve-month durational requirement of 20 C.F.R. § 416.909.

The ALJ's reasons for finding that Plaintiff's CRPS was not severe are not supported by substantial evidence. The ALJ relied on two primary rationales: (1) Plaintiff had normal physical examinations showing he was in "no acute distress," and (2) Plaintiff did not seek "long term pain management" for his CRPS symptoms. Neither rationale withstands scrutiny in the context of a CRPS claim.

### 3.1.1 The ALJ erred in relying on normal examination findings to discount the severity of Plaintiff's CRPS.

The ALJ found that:

> While the claimant certainly had positive findings at some examinations consistent with his chronic pain (e.g., 21F), he also had normal physical examinations (e.g., 27F/18,22,38; 18F/10- 11) and was described as in no acute distress at exams (e.g., 18F/153; 27F/34,43,48) even when reporting 8/10 pain (27F/38).

AR 1272.

The ALJ concluded that the severity of Plaintiff's CRPS was contradicted by the presence of normal physical examinations where Plaintiff was found to be in no

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 6

acute distress even when reporting high levels of pain. Here, the ALJ cited two sets of records: Exhibit 18F, a hospital visit record from July 10, 2022, when Plaintiff presented with COVID-19 concerns, not for evaluation of his CRPS or chronic pain, AR 1648–55, and Exhibit 27F, a series of Dr. Lenhart's treatment records. The ALJ's reliance on normal physical examinations and "no acute distress" notations from these records to discount the severity of Plaintiff's CRPS is flawed for several reasons.

First, a finding of "no acute distress" tells the examiner that a patient is not experiencing a sudden onset of severe symptoms at that moment—it says nothing about the patient's chronic condition. *See Troy A.H. v. Comm'r of Soc. Sec.*, Case No. 6:20-cv-01228-YY, 2022 WL 336846, at *5 (D. Or. Feb. 4, 2022) ("[T]he term 'acute' in the medical context refers to 'a health effect, usually of rapid onset, brief, not prolonged' ... Thus, it is questionable whether a chart note of 'no acute distress' is relevant to allegations of chronic symptoms.") (citations omitted).[1] Thus, the presence of normal physical examinations or exams showing that Plaintiff was not in acute distress does not rebut a finding of severity for Plaintiff's CRPS.

---

[1] *Mitchell v. Saul,* Case No. 2:18-cv-01501-GMN-WGC, 2020 WL 1017907, at *7 (D. Nev. Feb. 13, 2020), ("[T]he court agrees with Plaintiff that notations that Plaintiff was healthy 'appearing' and in no 'acute distress' do not distract from the findings regarding Plaintiff's chronic conditions."), *report and recommendation adopted sub nom. Mitchell v. Berryhill,* 2020 WL 1017899 (D. Nev. Feb. 28, 2020); *Richard F. v. Comm'r of Soc. Sec.,* Case No. C19-5220-JCC, 2019 WL 6713375, at *7 (W.D. Wash. Dec. 10, 2019), ("Clinical findings of 'no acute distress' do not undermine Plaintiff's testimony ... 'Acute' means 'of recent or sudden onset; contrasted with chronic.' Oxford English Dictionary, acute (3d ed. December 2011). Plaintiff's impairments are chronic, not acute.") (citation to the administrative record omitted).

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 7

Second, the ALJ cherry-picked from Dr. Lenhart's records. While citing normal physical examination findings from Exhibit 27F, the ALJ ignored that Dr. Lenhart's own assessments in those same records concluded that Plaintiff's "musculoskeletal conditions are disabling" and that Plaintiff's CRPS was a "chronic condition with acute exacerbation." AR 2261, 2269, 2274. *See Pettingill v. Saul,* No. 2:18-CV-2979-EFB, 2020 WL 2404616, at \*6 (E.D. Cal. May 12, 2020) (finding the ALJ erred in evaluating plaintiff's CRPS under SSR 03-2p where the evaluation was "based on cherry-picking only notations reflecting a positive response to medication" while "ignor[ing] the portions of the same medical records reflecting ongoing pain that impaired plaintiff's ability to perform daily activities").

The Commissioner cites *Durose v. Saul*, 846 F. App'x 453, 455 (9th Cir. 2021) and *Jennifer H. v. Comm'r of Soc. Sec.,* No. C20-6249-MAT, 2021 WL 5415282, at \*4 (W.D. Wash. Nov. 19, 2021) for the proposition that high reports of pain coupled with no acute distress can undermine a disability claim. Neither case is persuasive here because neither involved a claimant with CRPS—a condition whose unique diagnostic characteristics, as SSR 03-2p recognizes, provide context for precisely this kind of apparent inconsistency between reported pain and clinical presentation.

### 3.1.2 The ALJ erred in discounting the severity of Plaintiff's CRPS because he did not seek "long term pain management."

The ALJ also found:

Undermining the alleged severity of this condition is the fact the claimant never obtained any long term pain management as might reasonably be expected for the alleged disabling symptoms. He was referred to pain management in August 2023 (27F/16) and again in July 2024 (27F/11). The evidence shows the claimant has otherwise treated

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 8

his pain minimally and conservatively with cyclobenzaprine (27F/11), or Tylenol as needed (21F/2), and elsewhere reported treating his pain with marijuana (e.g., 18F/75; 27F/25).

AR 1272.

While evidence of conservative treatment can undercut a claimant's testimony regarding severity of an impairment, *Parra v. Astrue*, 481 F.3d 742, 751 (9th Cir. 2007), any evaluation of the aggressiveness of a treatment must account for the condition being treated, *Revels v. Berryhill*, 874 F.3d 648, 667 (9th Cir. 2017). The Commissioner cites *Parra* and *Tamara S. v. Comm'r of Soc. Sec.*, No. 3:22-CV-05745-GJL, 2023 WL 3568235, at *2 (W.D. Wash. May 18, 2023) for the general proposition that use of over-the-counter medicine and muscle relaxants are conservative treatments that undermine a disability claim. But neither case involved CRPS, and unlike the plaintiff in *Tamara*, Plaintiff here has not succeeded with conservative treatment and was not offered surgical treatment for his condition.

The ALJ does not explain why Plaintiff's prescribed treatments to treat his CRPS pain—Tylenol, and cyclobenzaprine in particular—do not qualify as "long term pain management," or what long term pain management even is for that matter. AR 1272. SSR 03-2p instructs that anti-inflammatory and muscle relaxant medications may be used to reduce CRPS pain. Plaintiff's treatment plan included: "cyclobenzaprine … to help with muscle pain"; "referral for pain clinic"; and "referral to physical therapy." AR 2261. The record also shows that Plaintiff sought more aggressive treatment, including opioid medication, which he was denied. *Id.* The record also shows that Plaintiff was compliant with his physical therapy

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 9

treatments. And despite adhering to his treatment plan, Plaintiff continued to report high pain levels. The ALJ's finding that Plaintiff did not obtain long term pain management treatment for his CRPS is an incomplete characterization of the record.

The Commissioner argues that any Step 2 error was harmless because the ALJ found other severe impairments, proceeded through the sequential evaluation, and expressly stated that he considered CRPS in accordance with the remand order. This argument fails. The ALJ's flawed Step 2 reasoning did not stay quarantined at Step 2; it carried through to the rejection of Dr. Lenhart's opinion—the only treating physician opinion addressing Plaintiff's CRPS-related functional limitations—ensuring that those limitations were never properly incorporated into the RFC. *See Burch v. Barnhart*, 400 F.3d 676, 684 (9th Cir. 2005) (error is harmless when there is no evidence of functional limitations from the omitted impairment that the ALJ failed to consider).

### 3.2    The ALJ erred in evaluating Dr. Lenhart's medical opinions.

Plaintiff contends that the ALJ erred in rejecting Dr. Lenhart's opinion.

For applications filed on or after March 27, 2017, the revised regulations direct ALJs not to defer to medical opinions from treating or examining sources. *See* 20 C.F.R. § 404.1520(c). The Ninth Circuit has held that under these revised social security regulations, "an ALJ's decision, including the decision to discredit any medical opinion, must simply be supported by substantial evidence." *Woods v. Kijakazi,* 32 F.4th 785, 787 (9th Cir. 2022). "'The most important factors' that the

agency considers when evaluating the persuasiveness of medical opinions are 'supportability' and 'consistency.'" *Id.* at 791 (quoting 20 C.F.R. § 404.1520c(a)).

The ALJ rejected Dr. Lenhart's opinion as unpersuasive, concluding that:

> However, Dr. Lenhart did not have the opportunity to review the longitudinal record that shows ongoing minimal treatment for the severe impairments. This opinion is not consistent with the claimant's own reports to his physical therapist that PT helps his symptoms (28F), nor is the severity of these opinions consistent with the claimant's reported activities such as playing football (28F). The severity of the opinion is inconsistent with Dr. Lenhart's own treatment records that reported no significant findings on exam (e.g., 27F/18,22, 38), and the claimant's report to him that while he was in treatment in July 2022 he was weight lifting and becoming more active (27F/35). This opinion is not consistent with the findings when the claimant sought care for other symptoms, reporting chronic knee pain and myalgias, but denying any gait problem with a normal musculoskeletal examination and no neurological deficits (18F/10-11). Despite his chronic pain, the claimant was in no acute distress (e.g., 18F/11). Dr. Lenhart's opinions are not persuasive the claimant has any greater limitations than those described in the residual functional capacity finding.

AR 1283.

The ALJ's reasons for discounting Dr. Lenhart's opinions are not supported by the record. First, the ALJ stated that Dr. Lenhart's opinions were inconsistent with the longitudinal record, which the ALJ described as showing "ongoing minimal treatment" for Plaintiff's CRPS. AR 1283. As evidence, the ALJ cited "28F"—Plaintiff's physical therapy records from Marsha Hiller, PT. AR 2303–31. But the ALJ's reading of these records was selective. While the records show that Plaintiff found physical therapy beneficial and was making progress, they also show that his pain levels remained consistently high, with reports of 10/10 pain levels as late as September 20, 2024. AR 2325. That physical therapy provided some symptomatic relief does not establish that Plaintiff could sustain full-time competitive

employment. *See Revels*, 874 F.3d at 667. And to the extent there are conflicts in the medical evidence, regarding CRPS, SSR 03-2p instructs that clarification "should be sought first from the individual's treating or other medical sources."

Second, the ALJ concluded that Plaintiff's report that he played football and his statement that he was weightlifting while in a drug rehabilitation facility in July 2022 undercut Dr. Lenhart's opinion. The ALJ did not provide a specific citation for the football reference, and the Court can only identify one instance in the physical therapy record where the word football is mentioned: "[Plaintiff] was 'surprised tackled' @ home when playing football." AR 2303. As to the weightlifting, the record reflects only that during a short stint in a substance abuse treatment facility, Plaintiff was "weightlifting … and becoming more active." AR 2285. The Ninth Circuit has "repeatedly asserted that the mere fact that a plaintiff has carried on certain daily activities . . . does not in any way detract from [his] credibility as to [his] overall disability." *Vertigan v. Halter*, 260 F.3d 1044, 1050 (9th Cir. 2001). Indeed, "[o]ne does not need to be 'utterly incapacitated' in order to be disabled." *Id.* The ALJ did not explain how playing football, perhaps just once, or weightlifting demonstrated a capacity for sustained, full-time work given Plaintiff's continued reports of severe pain. *See Alexander M. v. Commissioner of Social Security*, No. C21-254-BAT, 2021 WL 3758145, at *3 (W.D. Wash. Aug. 25, 2021) ("There is no indication in the record Plaintiff engaged in any of these activities at a frequency or degree contradicting Dr. Bartels' opinions."). ALJs "must be careful not to succumb to the temptation to play doctor" and draw inferences, as the ALJ did

here, from activities of daily living. *Janell S. v. Comm'r of Soc. Sec.*, No. 1:18-CV-03167-MKD, 2019 WL 6121409, at *12 (E.D. Wash. July 8, 2019).

Third, the ALJ concluded that Dr. Lenhart's opinions were internally inconsistent with his treatment records. An ALJ may discount a doctor's opinions when they are inconsistent with or unsupported by the doctor's own clinical findings. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008). But the ALJ does not explain how Dr. Lenhart's opinions are unsupported by his own clinical findings. The ALJ again focuses on "normal" exam findings and "no acute distress" notations, which, for the reasons discussed above, are of limited relevance in a CRPS case where the agency's own regulations warn that clinical signs are transitory and that pain may be disproportionate to observable findings. SSR 03-2p. Here, the record shows that Plaintiff reported consistent high levels of pain during his appointments with Dr. Lenhart. Plaintiff's CRPS provides context for the evidence that the ALJ finds "not consistent" with Plaintiff's normal physical examination findings.

Finally, the ALJ discounted Dr. Lenhart's opinion as inconsistent with findings from a July 10, 2022, hospital visit, where Plaintiff presented with COVID-19 concerns and was found to have chronic knee pain and myalgias, but denied any gait problems and had a normal musculoskeletal examination with no neurological deficits. For the same reasons discussed above, this hospital visit record does not undermine the severity of Plaintiff's CRPS, which is chronic in nature. The visit was for COVID-19, not for evaluation of CRPS or chronic pain, and the examination

was not designed to assess the kind of sustained exertional limitations Dr. Lenhart described.

The Commissioner cites several unpublished Ninth Circuit opinions for the proposition that normal gait and exam findings undermine disability claims. *See e.g., Davis v. Dudek*, No. 24-1980, 2025 WL 985112, at *2 (9th Cir. Apr. 2, 2025) (claim involving limited mobility resulting from carpal tunnel syndrome); *Lebert v. O'Malley*, No. 23-35301, 2024 WL 2206456, at *1 (9th Cir. May 16, 2024) (claim involving back pain from lumbar degenerative disc disease); *Wilson v. O'Malley*, No. 23-35463, 2024 WL 2103268, at *1–2 (9th Cir. May 10, 2024) (discounting claimant's allegations that he could barely walk with evidence of part-time manual labor jobs); *Green v. Saul*, 830 F. App'x 922, 923 (9th Cir. 2020) (examining physician's opinion outweighed non-treating physician's opinion about claimant's degree of impairment). But none of these cases involved CRPS, and each was resolved on distinguishable facts.

In sum, the ALJ's reasons for finding Dr. Lenhart's opinions unpersuasive are not supported by substantial evidence. The ALJ repeatedly relied on reasoning that fails to account for the unique diagnostic characteristics of CRPS as described in SSR 03-2p.

## 4. CONCLUSION

Accordingly, the Court ORDERS that this matter be REVERSED and REMANDED pursuant to sentence four of 42 U.S.C. § 405(g) to the Commissioner for further consideration consistent with this Order. On remand, the ALJ shall

reevaluate Dr. Lenhart's opinion and reconsider at Step 2 whether Plaintiff's CRPS is medically severe. The Clerk is DIRECTED to enter Judgment for Plaintiff and close the case.

Dated this 9th day of February, 2026.

Jamal N. Whitehead
United States District Judge

ORDER REVERSING AND REMANDING COMMISSIONER'S DECISION - 15